**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
THOMAS FEDELE, MATTHEW
ANDERSON, GREGORY AURIGEMMA,
ARTURO F. RAMIREZ-CALLE, and ALEC
ZEF,   **MEMORANDUM OF
              DECISION AND ORDER**
               Plaintiffs,   13-cv-6368 (ADS)(GRB)

        -against-

MARIANNE HARRIS, KIARAN JOHNSON-
LEW, MARY STARR, RICHARD ERNST,
JAMIE WOODWARD, HONORA "NONIE"
MANION, NANCY WILLIAMS, EDWARD
CHASZCZEWSKI, RICHARD ARNOLD,
ARGIROULA "ARGI" O'LEARY, VICTOR
VASTA, JR., TODD WYNNE, and DAVID
SAVOIE,

               Defendants.
---------------------------------------------------------X

**APPEARANCES:**

**Howard R. Birnbach, Esq.**
*Attorney for the Plaintiff*
111 Great Neck Road – Suite 413
Great Neck, NY 11201

**Eric T. Schneiderman, Attorney General of the State of New York**
*Attorneys for the Defendants*
200 Old Country Road, Suite 240
Mineola, NY 11501
     By:   Marsha W. Yee, Esq., Assistant Attorney General

**SPATT, District Judge.**

On November 18, 2013, the Plaintiffs Thomas Fedele, Matthew Anderson, Gregory

Aurigemma, Arturo F. Ramirez-Calle and Alec Zef (collectively the "Plaintiffs") commenced

this action pursuant to 42 U.S.C. § 1983 and certain tax secrecy statutes against the Defendants

Marianne Harris, Kiaran Johnson-Lew, Mary Starr, Richard Ernst, Jamie Woodward, Honora

"Nonie" Manion, Nancy Williams, Edward Chaszczewski, Richard Arnold, Argiroula "Argi" O'Leary, Victor Vasta, Jr., Todd Wynne, and David Savoie (collectively the "Defendants"). The Plaintiffs are, except for Anderson, members of the Criminal Investigations Division of the New York State Department of Taxation and Finance Office of Tax Enforcement (the "DTF" or the "Department"). Anderson is a former member of the Criminal Investigations Division. The Defendants are high-level officials within the Department.

In particular, the Plaintiffs allege that the Defendants, under color of state law, unlawfully initiated and conducted audits and tax investigations of the Plaintiffs as a pretext for terminating their civil service employment in retaliation for their exercise of certain constitutionally protected civil rights. The Plaintiffs further allege that the Defendants disclosed the Plaintiffs' confidential federal and New York State tax returns in violation of federal and state tax secrecy laws.

On January 24, 2014, the Defendants moved for (i) an order pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and 28 U.S.C. § 1406(a) granting their motion to dismiss or transfer this case for improper venue or, in the alternative, an order pursuant to 28 U.S.C. § 1404(a) granting their motion to transfer this case to the Northern District of New York; (ii) an order pursuant to Rules 50.1(d)(3) and 50.2(f)(2) of this district's Guidelines for the Division of Business Among District Judges granting their motion to cancel the designation of this case as a Long Island case; (iii) an order pursuant to Fed. R. Civ. P. Rule 12(b)(1) granting their motion to dismiss for lack of subject matter jurisdiction because this case is not ripe and the Plaintiffs lack standing; (iv) an order pursuant to Fed. R. Civ. P. 12(b)(6) granting their motion to dismiss the complaint for failure to state a claim upon which relief can be granted. The Plaintiffs oppose the Defendants' motion in its entirety.

For the following reasons, the motion is denied in part and granted in part.

## I. BACKGROUND

Unless stated otherwise, the following facts are drawn from the complaint and construed in a light most favorable to the non-moving parties, the Plaintiffs.

A. The Parties

The Plaintiff Thomas Fedele is domiciled in Bronx County of New York State.

The Plaintiff Matthew Anderson is domiciled in Nassau County of New York State.

The Plaintiff Gregory Aurigemma is domiciled in Nassau County of New York State.

The Plaintiff Arturo F. Ramirez-Calle is domiciled in Queens County in New York State.

The Plaintiff, Alec Zef, is domiciled in Nassau County in New York State.

The Defendant Marianne Harris was, at all relevant times, the Deputy Inspector General and later the Director of Internal Affairs of the DTF.

The Defendant Kiaran-Johnson-Lew was, at all relevant times, the Director of Human Resources of the DTF.

The Defendant Mary Starr was, at all relevant times, the Director of Personnel for the DTF.

The Defendant Richard Ernst was, at all relevant times, the Deputy Commissioner for Enforcement of the DTF.

The Defendant Jamie Woodward was, at all relevant times, the Acting Commissioner and later Executive Deputy Commissioner of the DTF.

The Defendant Honora "Nonie" Manion was, at all relevant times, the Director and Head of Audit for the DTF.

The Defendant Nancy Williams was, at all relevant times, the Head of Income/Franchise Tax Desk Audit Bureau for the DTF.

The Defendant Richard Arnold was, at all relevant times, the Section Head of Desk Audit Group for the DTF.

The Defendant Argiroula "Argi" O'Leary was, at all relevant times, the Assistant Deputy Commissioner for Litigation Strategy for the DTF.

The Defendant Edward Chaszczewski was, at all relevant times, the Director of Income/Franchise Desk Tax Audit Bureau of the DTF.

The Defendant Victor Vasta, Jr., was, at all relevant times, an Internal Affairs Investigators for the DTF.

The Defendant Todd Wynne was, at all relevant times, the Director of Labor Relations for the DTF.

The Defendant David Savoie was, at all relevant times, the Assistant Director of Labor Relations for the DTF.

B.  The Underlying Events

On July 8, 2010, an article appeared in the New York Post revealing that funding for cigarette sting operations by the Criminal Investigations Division – the Plaintiffs' unit – was substantially cut as a result of political pressure.  The same day, Thomas Stanton, the then-Director of the Criminal Investigations Bureau of the DTF, was terminated.  Shortly thereafter, Stanton's second in command, Deputy Director Paul Rossi was also terminated.  Neither Stanton nor Rossi were protected by the New York State Civil Service Law and, therefore, could be terminated without cause.

According to the Plaintiffs, they were closely associated with Stanton in their work at the Office of Tax Enforcement. However, under the civil service laws of New York, the Plaintiffs could not be terminated unless for cause.

In February 2011, Anderson resigned from the DTF.

On July 12, 2011, the Defendant Ernst e-mailed the Plaintiffs and others, threatening them with discipline arising from the leak of information to the New York Post.

On or about August 5, 2011, the Director of Investigations, Peter Persampieri, called Aurigemma, Ramirez-Calle, and Zef and directed them to call the Department of Internal Affairs and schedule interviews.

On or about August 16, 2011, the Plaintiffs Aurigemma, Ramirez-Calle, and Zef were interrogated by the Internal Affairs Investigators from the DTF with regard to the leaked story to the New York Post and asked about their associations with Stanton.

On or about August 25, 2011, the Plaintiffs received a notice of audit dated August 22, 2011, demanding production of records to substantiate the information on their 2010 tax returns.

According to the Plaintiffs, although the type of audit of the Plaintiffs' tax returns is typically performed by low-level tax department employees, the audits of their returns were closely supervised by top officials within the audit division of the Department, including the Defendants.

On or about November 30, 2011, the Defendants allegedly violated federal and state tax secrecy laws by disclosing the Plaintiffs' confidential tax return information to the Human Resources Division of the New York State Department of Taxation and Finance.

On April 23, 2012, the Defendants, under color of state law, allegedly caused a notice of deficiency to be served upon each of the Plaintiffs, alleging a deficiency in personal income

taxes allegedly due and payable. The Defendants contend that the Plaintiffs falsely claimed tax deductions for job-related expenses. The Plaintiffs assert that these notices of deficiency were a pretext designed to provide a lawful basis for the retaliatory termination of the Plaintiffs. Each of the Plaintiffs retained counsel and timely filed a challenge to the aforementioned notices of deficiency, which is pending before the New York State Department of Taxation, Division of Tax Appeals (the "DTA").

On or about June 5, 2012, the Defendants allegedly violated federal and state tax secrecy laws by disclosing the Plaintiffs' confidential tax return information to the Labor Relations Division of the DTF.

On August 17, 2012, the Defendant David Savoie allegedly ordered the Plaintiffs to submit to an interrogation regarding expenses set forth in their 2010 tax returns, the same issues that were pending before the DTA.

The Plaintiffs subsequently filed two petitions in New York State court pursuant to Article 78 of the New York Civil Practice Law and Rules, making certain Freedom of Information Law ("FOIL") requests. On August 20, 2013, following the issuance of an order from New York Supreme Court, Albany County directing the Defendants to turn over documents responsive to the Plaintiff's FOIL requests with regard to the Labor Relations interrogations, the Defendants suspended Fedele, Aurigemma, Ramirez-Calle, and Zef and placed them on administrative leave with full pay. The Plaintiffs received the letters placing them on administrative leave in their office in Brooklyn. (Fedele Affid., at ¶4.)

The Plaintiffs maintain that the interrogations and suspensions were in retaliation for exercising their civil rights, namely, their right to redress grievances under the First Amendment.

On November 18, 2013, the Plaintiffs filed the complaint in this action, alleging four causes of action: (1) violation of federal tax secrecy laws; (2) violation of state tax secrecy laws; (3) violation of 42 U.S.C. § 1983; and (4) conspiracy to violate 42 U.S.C. § 1983. The Plaintiffs seek monetary damages.

Soon after the complaint was filed, the Plaintiffs received a letter at their homes or Post Office Box addresses informing them that, as a part of their administrative leave, they were now placed "in standby mode on home assignment," and were required to be available within two hours from the time contacted by the Department. (Fedele Affid, at ¶5.) According to the Plaintiffs, the Defendants took this action in retaliation for having filed this complaint.

Also, after the complaint was filed, the DTF allegedly began using a document entitled "Authorization and Release of Personal Information Including Tax Information and Certification" for any individual promoted and for any new hires. The Authorization states in part that the employee "authorize(s) the [DTF] to examine any of [the employee's] personal income tax returns for any year . . . for the purpose of ascertaining the correctness of those returns. . . ." The employee, by signing, also agrees not to sue the DTF and its officers for the release of his/her tax return to the Counsel to the Governor. (Fedele Affid., at ¶ 18.) The Plaintiffs were never asked to sign such a form.

As noted above, on January 24, 2014, the Defendants filed the instant motion.

## II. DISCUSSION

A. Subject Matter Jurisdiction

The Supreme Court has cautioned federal courts not to exercise "hypothetical jurisdiction," and to address jurisdictional questions as a threshold issue. Steel Co. v. Citizens for

7

a Better Env't, 523 U.S. 83, 94-95, 118 S. Ct. 1003 (1998)).  Therefore, the Court first addresses the Defendants' argument that this Court lacks subject matter jurisdiction over this action.

"Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restrict the authority of federal courts to resolving the legal rights of litigants in actual controversies." Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1528, 185 L. Ed. 2d 636 (2013); see also Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982) ("The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request for forms of relief historically associated with courts of law in terms that have a familiar ring to those trained in the legal process.").

"As an incident to the elaboration of this bedrock requirement," a plaintiff seeking to maintain an action in federal court is "always required" to have standing. Valley Forge Christian College, 454 U.S. at 471; Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130 (1992) ("One of those landmarks, setting apart the 'Cases' and 'Controversies' that are the justiciable sort referred to in Article III – serving to identify those disputes which are appropriately resolved through the judicial process – is the doctrine of standing." (internal citation and quotation marks omitted)).  To that end, the issue of standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." Kiryas Joel Alliance v. Vill. of Kiryas Joel, 495 F. App'x 183, 188 (2d Cir. 2012) (summary order).

As the Supreme Court established in Lujan, "the irreducible constitutional minimum of standing contains three elements":

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or

> imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

504 U.S. at 560 (internal citations and quotation marks omitted). In addition, standing "'must exist at the commencement of litigation.'" Davis v. Fed. Election Comm'n, 554 U.S. 724, 732, 128 S. Ct. 2759, 171 L. Ed. 2d 737(2008) (citation omitted)

Focusing on the first requirement – injury in fact, which is in dispute – a "particular injury" requires "that the injury must affect the plaintiff in a personal and individual way." Arizona Christian Sch. Tuition Org. v. Winn, 131 S. Ct. 1436, 1442, 179 L. Ed. 2d 523 (2011). Here, the Defendants contend that the Plaintiffs have not suffered an injury in fact because the DTF has not terminated their employment and they receive full pay while on administrative leave. The Defendants, relying on Joseph v. Leavitt, 465 F.3d 87, 91 (2d Cir. 2006), argue that the Plaintiffs have not suffered an "adverse employment action."

However, Joseph involved a Title VII claim and whether an employee of the United States Food and Drug Administration suffered discrimination and adverse employment actions in violation of that statute. There is no required "adverse employment action" element for a claim of retaliation under Section 1983. Rather, to have standing to bring a claim under 42 U.S.C. § 1983, a plaintiff must "demonstrate that [he or she] personally suffer[ed] from a violation of their civil rights." Padberg v. McGrath–McKechnie, 203 F. Supp. 2d 261, 275 (E.D.N.Y. 2002).

In this case, the Court finds that the Plaintiffs sufficiently alleged an injury-in fact at this pleading stage. In particular, the Plaintiffs allege that they were subjected to retaliatory interrogations and audits and placed on administrative leave, thereby damaging their careers and reputations. In addition, the Plaintiffs allege damage by virtue of the breach of the

confidentiality of their tax filings. Thus, the Court denies the Defendants' motion insofar as they seek to dismiss this action for lack of subject matter jurisdiction.

B. Venue

The Defendants also contend that the Eastern District of New York is an improper venue because the events giving rise to the Plaintiffs' claims, or a substantial part thereof, occurred in the DTF's office in Albany New York., i.e., the Northern District of New York. Furthermore, the Defendants assert that, even if venue is proper in the Eastern District of New York, the Court should exercise its discretion to transfer this case to the Northern District of New York based on convenience.

On a motion to dismiss a complaint under Rule 12(b)(3) for improper venue, "the plaintiff bears the burden of establishing that venue is proper." French Transit v. Modern Coupon Sys., 858 F. Supp. 22, 25 (S.D.N.Y. 1994). A court applies the same standard of review in Rule 12(b)(3) dismissals as Rule 12(b)(2) dismissals for lack of personal jurisdiction. Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005). "If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a prima facie showing of [venue]." Id. (quoting CutCo Indus. v. Naughton, 806 F.2d 361, 364–65 (2d Cir. 1986)). Whether to dismiss an action for improper venue is in the district court's sound discretion. Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993). On such a motion, the plaintiff has the burden of showing that venue in the forum district is proper. Solow Bldg. Co. v. ATC Assocs., Inc., 175 F. Supp. 2d 465, 469 (E.D.N.Y. 2001). In analyzing a claim of improper venue, a court must view all facts in the light most favorable to the plaintiff. Phillips v. Audio Active Ltd., 494 F.3d 378, 384 (2d Cir. 2007). Thus, "'the Court must accept the facts alleged in the complaint and construe all reasonable inferences in the plaintiff's favor.'" Matera v. Native Eyewear, Inc., 355 F. Supp. 2d 680, 681

(E.D.N.Y. 2005) (quoting Fisher v. Hopkins, No. 02 Civ. 7077 (CSH), 2003 WL 102845, at *2 (S.D.N.Y. Jan. 9, 2003)).

Here, the Plaintiffs assert that venue is proper in the Eastern District of New York under the provisions of 28 U.S.C. § 1391(b)(2) ""because a substantial portion of the events giving rise to the claims for relief occurred within . . . [this district]." (Compl. ¶ 21.) In what the Plaintiffs' now characterize as a mistake, in their civil coversheet, they answered "no" to the following question: "Did the events o[r] omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?"

Putting aside this "error," venue can be proper in multiple districts, "as long as 'a substantial part' of the underlying events took place in those districts." Gulf Ins. Co., 417 F.3d at 356; Continental Ins. Co. v. Securi Enters., Inc., No. 09-CV-3731 (ILG)(VVP), 2010 WL 3702559, at *2 (E.D.N.Y. Aug. 16, 2010) ("Venue is appropriate in each district where a substantial part of the events or omissions occurred, and thus venue maybe appropriate in a given district even if a greater portion of events occurred elsewhere."). Thus, when a plaintiff relies on section 1391(b)(2) to defeat a venue challenge, a two-part inquiry is appropriate: 1) identify the nature of the claims and the alleged acts or omissions giving rise to the claims, and 2) determine whether a substantial part of the acts or omissions occurred in the district where the suit was filed. Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005) (citing Gulf Ins. Co., 417 F.3d at 357). "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." Id. at 432-33.

Where there are some acts that took place within the plaintiff's chosen forum, they are properly deemed "significant" if they have a "close nexus to the claims." Id. at 433. "Only the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a substantial part of the events are to be considered." Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371 (11th Cir. 2003). Although Section 1391(b)(2) does not require that the most substantial part of the events giving rise to the claims occurred in the Eastern District, the Second Circuit has cautioned district courts "to take seriously the adjective 'substantial'" and thus "for venue to be proper, significant events or omissions *material* to the plaintiff's claim must have occurred in the district in question." Gulf Ins. Co., 417 F.3d at 357. In reviewing connections to a district, the Court is mindful of the difference between a relevant connection to the State for purposes of personal jurisdiction, and "substantial events" that took place in the district for purposes of venue. See id. ("It would be error, for instance, to treat the venue statute's "substantial part" test as mirroring the minimum contacts test employed in personal jurisdiction inquiries.").

Here, as to the first prong of the inquiry under Daniel – namely, the nature of the claims – the causes of action center largely on actions taken by the Defendants that affected the Plaintiffs' employment in, the Plaintiffs assert, this district, in violation of 28 U.S.C. § 1983. For example, the Defendants placed the Plaintiffs, except for Anderson, on administrative leave with full pay and the notices placing the Plaintiffs on administrative leave were served on them at their Brooklyn office. The Plaintiffs further allege that the Defendants conspired to deprive them of their constitutional rights. Also, the Plaintiffs allege violations of federal and state tax secrecy laws in connection with the disclosures of their confidential tax returns, which were presumably prepared in the Eastern District of New York.

As to the second prong of the inquiry under Daniel – namely, whether a substantial part of the acts or omissions occurred in the district where the suit was filed – the Plaintiffs contend that they suffered harm in their employment in the Eastern District of New York.

"It is clear that in some cases, the fact that the Plaintiff suffers harm in a particular judicial district is sufficient to satisfy § 1391(b)(2)." Kirk v. New York State Dep't of Educ., 08-CV-6016 (CJS), 2008 WL 819632, at *4 (W.D.N.Y. Mar. 25, 2008). For example, in Bates v. C & S Adjusters, Inc., 980 F.2d 865 (2d Cir. 1992), in which the plaintiff was asserting a claim under the Fair Debt Collection Practices Act, the Second Circuit found it sufficient, for purposes of § 1391(b)(2), that the plaintiff had received a collection letter in the chosen forum. See id. at 868 ("In adopting [the Fair Debt Collection Practices Act], Congress was concerned about the harmful effect of abusive debt collection practices on consumers. . . . This harm does not occur until receipt of the collection notice. . . . We conclude that receipt of a collection notice is a substantial part of the events giving rise to a claim under the Fair Debt Collection Practices Act."); see also Daniel v. American Bd. Of Emergency Medicine, 988 F. Supp. 127, 274 (W.D.N.Y. 1997) ("ABEM's denial of the applications and appeals of Dr. Daniel and five other individual Plaintiffs and the official communication of this action to Plaintiffs in New York is sufficient to constitute a substantial part of the events giving rise to Plaintiff's claims.")(citations omitted).

"Other cases have held that the situs of the alleged harm to the plaintiff is a factor in deciding whether a substantial part of the events or omissions giving rise to a claim occurred in the particular district." Kirk, 2008 WL 819632, at *4; see New York Mercantile Exch. v. Central Tours Int'l, Inc., No. 96 Civ. 8988 (SAS), 1997 WL 370600 at *4 (S.D .N.Y. Jul. 1, 1997) ("The place where the harm occurred is also relevant for venue purposes.")(citation omitted); but see,

Astor Holdings, Inc. v. Roski, No. 01 CIV. 1905 (GEL), 2002 WL 72936 at *9 (S.D.N.Y. Jan. 17, 2002) ("There is an obvious potential for unbounded venue if the courts were to find venue regardless of where the acts occurred, based solely on the existence of economic harm felt in the district where the plaintiff resides or is headquartered. Therefore, while the locus of the harm suffered is a factor to consider, the case law does not support the theory that venue is proper on an economic-effects inquiry alone.").

However, "this Court finds that venue determinations based solely on the location of the harm is contrary to Congress's intent in drafting section 1391(b) and the Second Circuit's directive that the venue analysis should focus on the relevant activities of the defendants." Cold Spring Harbor Lab. v. Ropes & Gray LLP, 762 F. Supp. 2d 543, 558 (E.D.N.Y. 2011), citing Daniel, 428 F.3d at 432; MB Financial Bank, N.A. v. Walker, 741 F. Supp. 2d 912, 918 (N.D. Ill. Sept. 23, 2010) ("If the situs of a plaintiff's economic injury were dispositive, §§ 1391(a)(1) and 1391(a)(3) would be superfluous . . . . A plaintiff could always sue in its home district because, after all, home is where the wallet is. Moreover, Congress amended § 1391 specifically to remove the plaintiff's home from the venue equation.") (citations omitted).

In this case, although the Court considers the situs of the alleged harm as a factor in its venue analysis, the Court finds that the Plaintiffs have not shown that a substantial part of the events or omissions giving rise to their claims occurred in the Eastern District. All the allegations which form the basis of the Plaintiff's complaint occurred at the DTF's office in Albany. Dolson v. New York State Thruway Auth., 00 CIV. 6439 (RLC), 2001 WL 363032, at *1 (S.D.N.Y. Apr. 11, 2001)(transferring case from Southern District of New York to Northern District of New York where former employee of the New York State Thruway Authority sought damages pursuant to 42 U.S.C. § 1981 and 1983 based upon claims of retaliation and racial

discrimination); see also Matter of Anonymous v. Kaye, 94 CIV. 2882 (JFK), 1995 WL 617795, at *2 (S.D.N.Y. Oct. 19, 1995)("The substantial part of the events giving rise to this claim did not occur within the Southern District. In fact, none of the events did. All of the New York Defendants' challenged actions took place in Albany, New York. Plaintiff's application to take the New York State Bar Examination was reviewed and denied in Albany. The challenged New York regulations were also promulgated and adopted in Albany."), aff'd sub nom. Anonymous v. Kaye, 104 F.3d 355 (2d Cir. 1996). "Therefore, 28 U.S.C. § 1391(b)(2) fails to validate venue in this district, and instead validates venue in the Northern District of New York." Dolson, 2001 WL 363032, at *1.

The fact that the Defendants placed the Plaintiffs, excluding Anderson, on "home detention" does not alter this conclusion. First, as a factual matter, the record contradicts the Plaintiffs' claim that the DTF placed them on "home detention." The DTF merely required the Plaintiffs, excluding Anderson, to provide a daytime telephone number at which the DTF could reach them during business hours and to be ready to report to work within two hours. Further, absent supplemental pleading, the Plaintiff cannot rely on an alleged post-complaint event to show that venue was proper at the commencement of the litigation. Brandir Int'l, Inc. v. Cascade Pac. Lumber Co., 84 CIV. 1411 (CSH), 1988 WL 140821, at *3 (S.D.N.Y. Dec. 22, 1988)("circumstances at the time of filing the complaint govern venue").

When venue is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." Minette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993). When determining this issue, the Court takes into account the ultimate goal of the "expeditious and orderly

adjudication of cases and controversies on their merits." Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962).

In the present case, the interests of justice mandate transfer to an appropriate forum rather than outright dismissal. The Defendants are amenable to suit and venue is proper in the proposed transferee district, the Northern District of New York. Dismissal of this action would require the Plaintiffs to file a new action in the Northern District of new York, "while transfer will allow this action to proceed in that forum and lead to adjudication on the merits." Hatfield v. Asphalt Int'l, Inc., 03 No. 1372 (DAB), 2004 WL 287680, at *4 (S.D.N.Y. Feb.11, 2004). The Court notes that the Plaintiffs have commenced two Article 78 petitions in New York State Supreme Court, Albany County.

Accordingly, the Court finds that transferring the present action to the Northern District of New York furthers the interests of justice and is therefore proper under 28 U.S.C. § 1406.

Therefore, based on the foregoing venue decisions, the Court declines to address that part of the Defendants' motion seeking to dismiss the complaint for failure to state a claim upon which relief can be granted.

### III.    CONCLUSIONS

For the foregoing reasons, the Court denies in part and grants in part the Defendants' motion. That part of the Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction is denied. Pursuant to 28 U.S.C. § 1406, the Court grants the Defendants' motion to the extent the Court finds that venue in the Eastern District of New York is improper. The Clerk of the Court is directed to transfer this case to the Northern District of New York. The remaining branches of the Defendants' motion are denied without prejudice with leave to renew in accordance with the individual rules of the newly-assigned district court judge.

**SO ORDERED.**

Dated: Central Islip, New York
May 9, 2014

                                                              *Arthur D. Spatt*
                                                              ARTHUR D. SPATT
                                                           United States District Judge